IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHAPPELL L. AMES,

    Plaintiff,

v.                                             Civil Action No. 3:16CV781

ROBIN SIDI,

    Defendant.

**MEMORANDUM OPINION**

Chappell L. Ames, Sr., a Virginia inmate proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on the Motion for Summary Judgment filed by Robin Sidi, R.N.[2] Ames has not responded. For the reasons set forth below, the Motion for Summary Judgment (ECF No. 46) will be granted.

**I. STANDARD FOR SUMMARY JUDGMENT**

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] The matter is proceeding on Ames's Amended Complaint. (ECF No. 22-2.) The Court corrects the capitalization, spelling, and punctuation in the quotations from the parties' submissions.

[2] The Amended Complaint also named Nurse Edwards and Dr. Gujral as Defendants. Because Ames failed to timely serve Edwards and Gujral, by Memorandum Order entered on May 24, 2019, the Court dismissed without prejudice all claims against them. (ECF No. 45.)

56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . .

. upon whom the onus of proof is imposed.'" Id. (quoting Munson, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)); see Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of her Motion for Summary Judgment, Nurse Sidi submitted her declaration ("Sidi Decl.," ECF No. 47-1), and Ames's medical records ("Medical Records," ECF No. 47-2). Although Ames did not respond to the Motion for Summary Judgment, his Amended Complaint appears to be verified. (ECF No. 22-2, at 19.) Accordingly, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Ames.

## II. PERTINENT, UNDISPUTED FACTS

In 2014, Nurse Sidi worked as a charge nurse at Sussex II State Prison ("SIISP"). (Sidi Decl. ¶ 4.) SIISP is a "high security prison that houses approximately 1500 offenders." (Id.) One of Nurse Sidi's "administrative duties was to triage emergency grievances submitted by offenders." (Id.) Nurse Sidi notes that "[a]s a registered nurse, [she] work[s] exclusively under the

supervision of a physician and [does] not have the independent authority to order referrals for treatment." (Id. ¶ 10.)

On Friday, September 19, 2014, at approximately 9:00 a.m., Ames injured his knee while playing basketball at SIISP. (Am. Compl. ¶ 1.) Ames was taken to the infirmary where he was examined by Nurse Street. (Id. ¶¶ 4-7.) Ames told Nurse Street that he was in a lot of pain and wanted to go to the hospital. (Id. ¶ 7.) Nurse Street told Ames that only Dr. Gujral could authorize emergency treatment outside of SIISP and he was not currently at SIISP. (Id. ¶¶ 8-9.) Nurse Street contacted Dr. Gujral and informed him of Ames's injury. (Id. ¶ 12.) Dr. Gujral refused to approve Ames for outside emergency care. (Id. ¶ 13.) Dr. Gujral ordered Nurse Street to schedule Ames for x-rays and an appointment with Dr. Gujral on Monday. (Id.) Nurse Street wrapped the knee in an ace bandage (Medical Records 1), and provided Ames with crutches and pain reliever.[3] (Am. Compl. ¶ 15.)

On Monday, September 22, 2014, Ames asked Correctional Officer Weatherby to check whether Ames was on the list to see the doctor. (Id. ¶ 24.) Nurse Sidi received a call from Weatherby and informed him that Ames was not on the list and directed Ames

---

[3] Ames contends that he was provided with ibuprofen. (Am. Compl. ¶ 15.) Ames medical records reflect that he was given 600 milligrams of Motrin for 10 days. (Medical Records 1.)

4

to submit a sick call request if he would like to be assessed. (Sidi Decl. ¶ 6.)

Thereafter, Weatherby informed Ames that he was not on the list to see the doctor. (Am. Compl. ¶ 25.) Ames showed Weatherby his injured knee and asked Weatherby to call the medical department so that they would provide emergency care. (Id. ¶ 26.) Upon seeing Ames's injured knee, Weatherby's eyes "bulged . . . in disbelief and concern, and immediately called the medical department in [Ames's] presence." (Id. ¶ 27.) After the conclusion of the phone call, Weatherby told Ames, "that he had just spoken with . . . Nurse Sidi, and that she said he was not on the list for medical, she would not call him over, and that he needed to submit a sick call slip." (Id. ¶ 31.)

Weatherby told Ames to submit a Medical Emergency Grievance Slip and he would deliver it to the Medical Department. (Id. ¶ 32.) At 1:30 p.m., Ames submitted his Medical Emergency Grievance Slip, which explained that he had been "seriously injured" and had been told he would see the doctor on Monday and have x-rays taken. (Id. ¶ 33.) Upon receipt of the Medical Emergency Grievance Slip in the medical department, "Ames's chart was brought to Dr. Gujral, who was advised about the emergency grievance and the injury assessment done by the nurse on September 19, 2014." (Sidi Decl. ¶ 7 (citation omitted).)

> Ultimately, given the non-life threatening nature of Mr. Ames's complaint, the emergency grievance was deemed 'non-emergent' and the grievance was returned to [Ames] indicating that his chart had been left for the doctor to review. Thereafter, Dr. Gujral signed off on the chart indicating that he had reviewed the injury assessment and noted an x-ray was ordered with no additional orders at that time.

(Id. (citation omitted).) Ames was placed on the list to be seen by the doctor, once the x-rays results came back. (Id.)

According to Nurse Sidi:

> Later that same day, Mr. Ames submitted a second emergency grievance seeking medical attention for his injured knee. Because this was non-threatening, [Nurse Sidi] again deemed the grievance as "non-emergent" and advised Mr. Ames that the doctor had already ordered an x-ray and prescribed medication for pain. At no time on September 22, 2014, or thereafter, did Mr. Ames submit a sick call request to be seen by medical.

(Id. ¶ 8.) Nurse Sidi had no further contact with Ames with respect to the issues in this lawsuit. (Id. ¶ 9.)

On September 24, 2014, x-rays of Ames's knee were taken. (Am. Compl ¶ 39.) Thereafter, Ames received an MRI of his knee (id. ¶ 56), and eventually surgery on his knee (id. ¶ 76.) However, before he received surgery, Ames fell and injured his knee and back. (Id. ¶ 59.)

### III. EIGHTH AMENDMENT ANALYSIS

To survive a motion for summary judgment on an Eighth Amendment claim, Ames must demonstrate that Nurse Sidi acted with

6

deliberate indifference to his serious medical needs. See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (citing

7

Farmer, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citing Estelle, 429 U.S. at 103-04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citing Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970)).

Nurse Sidi's interaction with Ames was limited to responding to a phone call from Weatherby and two emergency grievances submitted by Ames. Upon receiving the phone call, she informed Weatherby that Ames was not on the list to be seen by the doctor and that Ames should submit a sick call slip if Ames wished to be

assessed. Instead, Ames submitted an emergency grievance complaining about his knee injury. Nurse Sidi promptly brought the emergency grievance and Ames's medical chart with Nurse Street's assessment, to Dr. Gujral. Upon review of that information, Dr. Gujral concluded, given the pain medication and crutches provided, and the scheduling of x-rays, Ames did not require emergency medical care. Absent extraordinary circumstances not present here, Nurse Sidi is entitled to rely upon the medical judgment of a doctor as to the proper course of treatment for an inmate. See Pearson v. Prison Health Serv., 850 F.3d 526, 539 (3d Cir. 2017) (concluding nurse did not act with deliberate indifference by following doctor's orders); Berry v. Peterman, 604 F.3d 435, 443 (7th Cir. 2010) (citation omitted) (observing that "a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations, that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient"). Thus, Ames fails to demonstrate that Nurse Sidi acted with deliberate indifference. Accordingly, Ames's Eighth Amendment claim for monetary damages will be dismissed.

The Court notes that Ames seeks injunctive relief in the form of "an order from the Court requiring the Defendants to send him out for corrective/surgery treatments for his back and hip." (Am. Compl. 18.) To survive summary judgment on an Eighth Amendment

claim for injunctive relief, an inmate "must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so." Farmer, 511 U.S. at 846. Ames has not come forward with any evidence that Nurse Sidi was or is "disregarding an objectively intolerable risk of harm" with regard to the need for the medical care for Ames's back and hip. Id. Accordingly, Ames demand for injunctive relief from Nurse Sidi will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Nurse Sidi's Motion for Summary Judgment (ECF No. 46) will be granted. Ames's claim and the action will be dismissed.

The Clerk is directed to send a copy of this Memorandum Opinion to Ames and counsel of record.

It is so ORDERED.

/s/ R E P
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 31, 2019

10